UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20521-DSL

UNITED STATES OF AMERICA

v.

J. MITCHELL LOWE,

**Defendant.**
_____/

**UNITED STATES' UNOPPOSED MOTION FOR
PRELIMINARY ORDER OF FORFEITURE**

Pursuant to 18 U.S.C. § 981(a)(1)(C), and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States moves for the entry of a Preliminary Order of Forfeiture against Defendant **J. MITCHELL LOWE** (the "Defendant") in the above-captioned matter. The United States seeks a forfeiture money judgment in the amount of $388,224. In support of this motion, the United States provides the following factual and legal bases.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 11, 2024, the United States filed a Superseding Information charging the Defendant in Count 1 with Conspiracy to Commit Securities Fraud in violation of 18 U.S.C. § 371. Superseding Information, ECF No. 139. The Superseding Information also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 371, the Defendant shall forfeit y property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(l)(C). *See id.* at 27.

On September 16, 2024, the Court accepted the Defendant's guilty plea to Count 1 of the Superseding Information. *See* Minute Entry, ECF No. 143; Plea Agreement ¶ 1, ECF No. 145. As

part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $388,224.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, ECF No. 146. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 17.

## II.   MEMORANDUM OF LAW

### A.  Directly Forfeitable Property

Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation for securities fraud is forfeitable. 18 U.S.C. § 981(a)(1)(C). If a defendant is convicted of such violation, the Court "shall order" the forfeiture of property as part of the sentence. *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c). Criminal forfeiture is governed by the preponderance standard. *See United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). Upon finding that property is subject to forfeiture by a preponderance, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria.  The court must enter the order without regard to any third party's interest in the property.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A).

### B.  Forfeiture Money Judgments

A forfeiture order may be sought as a money judgment.  *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that Federal Rules of Criminal Procedure "explicitly contemplate the entry of money judgments in criminal forfeiture cases"). The forfeiture money judgment is final as to the defendant "[a]t

2

sentencing—or at any time before sentencing if the defendant consents." *See* Fed. R. Crim. P. 32.2(b)(4)(A). No ancillary proceeding is required when forfeiture consists solely of a money judgment. *See* Fed. R. Crim. P. 32.2(c)(1). As additional property is identified to satisfy the forfeiture money judgment, the Court must order the forfeiture of such property. *See* Fed. R. Crim. P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

The amount of the money judgment should represent the full sum of directly forfeitable property, regardless of the defendant's ability to satisfy the judgment at the time of sentencing. *See United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) (adopting the majority rule); *see also United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order."). The Court determines the amount of the money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The Court in imposing a forfeiture money judgment may rely on an agent's reliable hearsay. *See United States v. Stathakis*, 2008 WL 413782, at *14 n.2 (E.D.N.Y. Feb. 13, 2008).

### C. Property Subject to Forfeiture in Instant Criminal Case

Pursuant to the Factual Proffer signed by the Defendant, beginning in or around August 2017, and continuing through in or around March 2019, within the Southern District of Florida and elsewhere, the Defendant, the Chief Executive Officer of MoviePass Inc. ("MoviePass"),

knowingly and willfully conspired and agreed with Coconspirator 1, the Chief Executive Officer and Chairman of the Board of Helios & Matheson Analytics Inc. ("HMNY"), to commit securities fraud.

MoviePass was a privately held company that offered a subscription service through which subscribers paid a flat monthly fee in exchange for a certain number of movie tickets per month. To use the service, a subscriber would select a movie, theater, and show time through the MoviePass application on the subscriber's smartphone, and then use a MoviePass-branded debit card that was loaded with the cost of the movie ticket to pay at the selected theater.

HMNY was a public company that purported to be a leader in data analytics and artificial intelligence. HMNY's common stock traded on NASDAQ.

By the summer of 2017, MoviePass was running out of money. The Defendant was on the verge of shutting down MoviePass's business operations when he met Coconspirator 1. In the course of discussions about a potential deal between HMNY and MoviePass, Coconspirator 1 told the Defendant that he was an expert in promoting stock and had access to large sums of capital from sources on Wall Street.

Coconspirator 1 and the Defendant agreed on a plan to use MoviePass to artificially inflate HMNY's stock price and fraudulently raise new money. As part of the agreed on plan, on August 15, 2017, HMNY and MoviePass jointly announced that:

    a.    HMNY had acquired a majority ownership interest in MoviePass (the "Acquisition").

    b.    The Acquisition allowed MoviePass to introduce a new "unlimited" plan that purported to allow subscribers the opportunity to watch "any movie any theater any day" for $9.95 per month.

    c.  HMNY would "increase shareholder value" by using HMNY's "big data" and "artificial intelligence" capabilities to monetize MoviePass's subscriber data, including from the new subscribers MoviePass expected to sign up as a result of its newly-announced $9.95 "unlimited" plan.

 Coconspirator 1 and the Defendant then agreed on a series of false and misleading talking points, which Coconspirator 1 and the Defendant repeated in press releases, SEC filings, interviews on podcasts and on television, and in print and online media, all of which were intended to reach, and at times did in fact reach, investors and the general public throughout the United States, including within the Southern District of Florida and elsewhere. Coconspirator 1 and the Defendant appeared in the media and reviewed and approved the press releases and SEC filings. Coconspirator 1 and the Defendant communicated regularly throughout the conspiracy – in-person, by telephone and by text message – to discuss what they would say in joint and solo media appearances to make misleading positive statements about HMNY and MoviePass to artificially inflate HMNY's stock price and attract new investors.

 The Defendant agrees that he received at least $388,224.13 in salary payments during and in furtherance of the conspiracy in 2017, 2018, and 2019, which constitute proceeds traceable to the commission of the offense.

 Based on the record in this case, the total value of the proceeds traceable to Count 1 is $388,224.13, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

 Accordingly, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and Fed. R. Crim. P. 32.2, the Court should issue the attached proposed order, which provides for the entry of a forfeiture money judgment against the Defendant; the inclusion of the forfeiture as part of the

Defendant's sentence and judgment in this case; and permission to conduct discovery to locate assets ordered forfeited.

## LOCAL RULE 88.9 CERTIFICATION

Pursuant to Local Rule 88.9, I hereby certify that the undersigned counsel has conferred with defense counsel via e-mail on September 17, 2024, and there is no opposition/objection to the relief sought.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: /s/ Emily R. Stone
 EMILY R. STONE
Assistant United States Attorney
Florida Bar No. 92077
99 NE 4th Street, 7th Floor
Miami, Florida 33132
Tel: (305) 961-9407
Emily.Stone@usdoj.gov